**KAYE, ROSE & PARTNERS, LLP**
Bradley M. Rose, Esq. (126281)
Frank C. Brucculeri, Esq. (137199)
Daniel F. Berberich, Esq. (215946)
9100 Wilshire Blvd., Suite 420W
Beverly Hills, CA 90212
Telephone: (310) 551-6555
Facsimile: (310) 277-1220
E-mail:  brose@kayerose.com
         fbrucculeri@kayerose.com
         dberberich@kayerose.com

Attorneys for Defendants
**ZODIAC MARITIME AGENCIES, LTD.**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MALAHNI,<br><br>              Plaintiff,<br><br>       v.<br><br>APOLLO NAVIGATION CORP;<br>VESSEL M.V. HYUNDAI<br>INDEPENDENCE; ZODIAC<br>MARITIME AGENCIES, LTD.;<br>HYUNDAI HEAVY INDUSTRIES<br>CO., LTD.,<br><br>              Defendants. | Case No.: CV15-00473 PSG(MRWx)<br><br>**DEFENDANT ZODIAC MARITIME AGENCIES, LTD.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Hon. Phillip S. Gutierrez<br><br>FPC:   Jan 11, 2016 at 2:30 PM<br>Trial:   February 2, 2016 at 9:00 AM<br>Judge:  Hon. Philip S. Gutierrez<br>Place:  Courtroom 790-Roybal |

Defendant ZODIAC MARITIME AGENCIES, LTD. (hereinafter "ZMA") hereby submits its Memorandum of Contentions of Fact and Law pursuant to the Court's August 4, 2009 Order for Jury Trial and Local Rule 16-4.  This Memorandum addresses the following topics: Claims and Defenses; Bifurcation of Issues, Jury Trial, Attorneys' Fees, and Abandonment of Issues.  Filed concurrently under separate cover are the Witness List and Exhibit List.

///

KAYE, ROSE & PARTNERS, LLP

# **TABLE OF CONTENTS**

MEMORANDUM OF CONTENTION OF FACT AND LAW……………………………1

I.   CLAIMS AND DEFENSES…………………………………………………………1

    A.   Plaintiff's Claim…………………………………………………………………1

    B.   Elements of Plaintiff's Claim……………………………………………………1

    C.   ZMA's Evidence in Opposition to Plaintiff's Claim…………………….....2

    D.   Affirmative Defenses That ZMA Has Pleaded And Plans to Pursue……...6

    E.   Elements Required to Establish ZMA's Affirmative Defenses……………8

    F.   Description of Evidence In Support of Each Affirmative Defense………..12

    G.   Identification of Evidentiary Issues……………………………………..20

    H.   Identification of Issues of Law…………………………………………..21

II.   BIFURCATION OF ISSUES………………………………………………..21

III.   JURY TRIAL………………………………………………………………..22

IV.   ATTORNEYS' FEES………………………………………………………..22

V.   ABANDONMENT OF ISSUES……………………………………………..22

CV15-00473 PSG (MRWx)

KAYE, ROSE & PARTNERS, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

*Almarez v. Universal Marine Corp.*
472 F.2d 123, 124 (9th Cir. 1972)…………………………………………......9, 12

*Arthur Young & Co. v. U.S. Dist. Court*
549 F.2d 686, 697 (9th Cir. 1977)…………………………………………….22

*Beeck v. Acquaslide N. Dive Corp.*
562 F.2d 537, 542 (8th Cir. 1977)…………………………………………….22

*Becker v. Poling Trans. Corp.*
356 F.3d 381, 390-391 (2nd Cir. 2004)……………………………………….12

*Bjaranson v. Botelho Shipping Corp., Manila*
873 F.2d 1204, 1207 (9th Cir. 1988)……………………………………2, 9, 10

*Bloomer v. Liberty Mutual Ins. Co.*
445 U.S. 74, 75 (1979)………………………………………………………..12

*Cabezas v. U.S.*
2007 U.S. Dist. LEXIS 72625, *18 (N.D. Cal. 2007)………………………….9

*Farr v. North Carolina Mach. Co.*
186 F.3d 1165, 1168 (9th Cir. 1999)………………………………………….11

*Frederick v. Kirby Tankships, Inc.*
205 F.3d 1277, 1286 (11th Cir. 2000)……………………………….....…..9

*Gruver v. Lesman Fisheries, Inc.*
489 F.3d 978, 985 (9th Cir. 2007)…………………………………………….11

*Hangarter v. Provident Life & Accident Ins. Co.*
 373 F.3d 998, 1021 (9th Cir. 2004)………………………………………….22

*In re Paoli R.R. Yard PCB Litig.*
113 F.3d 444, 452, fn.5 (3rd Cir. 1997)……………………………………….22

*McDermott, Inc. v. AmClyde & Don River Castings, Ltd.*
511 U.S. 202 (1994)……………………………………………………………12

CV-09-03465 PSG
(SSx)

KAYE, ROSE & PARTNERS, LLP

*Merchants Home Delivery Service, Inc. v. NLRB*
580 F.2d 966, 973 (9th Cir. 1978)……………………………………………………11

*Miller v. Rowan Co., Inc.*
815 F.2d 1021, 1028 (5th Cir. 1987)…………………………………………………12

*Moss v. Assoc. Trans., Inc.*
344 F.2d 23, 25-26 (6th Cir. 1965)……………………………………………………22

*Peters v. North River Ins. Co.*
764 F.2d 306, 311 (5th Cir. 1985)……………………………………………………12

*Polizzi v. M/V ZEPHYROS II MONROVIA*
860 F.2d 147, 149 (5th Cir. 1988)……....………………………………………………11

*Pope & Talbot, Inc. v. Hawn*
346 U.S. 406, 408-409 (1953)…………………………………………………10, 12

*Port of Portland v. Director, Office of Workers Comp. Program*
932 F.2d 836, 839 (9th Cir. 1991)……………………………………………………10

*Saxion v. Titan-C-Mfg., Inc.*
86 F.3d 553 (6th Cir. 1996)…………………………………………………………...22

*Scindia Steam Navigation Co., Ltd. v. De Los Santos*
541 U.S. 156, 166-167 (1981)………………………………………..1, 9, 10, 11, 21

*Shaver Transp. Co. v. Chamberlain*
399 F.2d 893, 895 (9th Cir. 1968)…………………………...……………………...9, 12

*The Etna*
138 F.2d 37, 41 (3rd Cir. 1943)………………………………………………………12

*Trueba v. Flota Bananera Ecuadorian Lines, Inc.*
675 F.Supp. 786, 788 (S.D.N.Y. 1987)………………………………………………1

*Young v. American Export Isbrandtsen Lines, Inc.*
291 F.Supp. 447, 450 (S.D.N.Y. 1968) …………………………………………...9

KAYE, ROSE & PARTNERS, LLP

CV-09-03465 PSG
(SSx)

# CODES/STATUTES/RULES

33 U.S.C. § 901 et seq. ………………………………………..............................1, 8

33 U.S.C § 905(b) ……………………………………………………………...1

33 U.S.C. § 933(f)…………………………………………………………….12

*Federal Rules of Civil Procedure* 42(b) …………………………………………..21

*Longshore and Harbor Worker's Compensation Act* § 905(b)…………..………………1

*Restatement (Second) of Agency*, § 220…………………………………………...11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KAYE, ROSE & PARTNERS, LLP

CV-09-03465 PSG (SSx)

DEFENDANT ZODIAC MARITIME AGENCIES, LTD.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## MEMORANDUM OF CONTENTION OF LAW AND FACT

I. <u>CLAIMS AND DEFENSES</u>

    A.    <u>Plaintiff's Claim</u>

    1.    Plaintiff JOHN MALANNI (hereinafter "Plaintiff") has pleaded a claim against Defendant ZODIAC MARITIME AGENCIES, LTD. (hereinafter "ZMA") for negligence under section 905(b) of the Longshore and Harbor Worker's Compensation Act ("LHWCA"), 33 U.S.C. § 901 et seq.

    B.    <u>Elements of Plaintiff's Claim</u>

    2.    The elements required to establish a claim for negligence under 33 U.S.C. § 905(b) are: (1) that the vessel had a duty to protect against the hazard; (2) breach of that duty; (3) injury; and (4) that the injuries and damages were proximately caused by the negligence of the vessel. *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 541 U.S. 156, 166-167 (1981); *Trueba v. Flota Bananera Ecuadorian Lines, Inc.*, 675 F.Supp. 786, 788 (S.D.N.Y. 1987). The five duties that a vessel owes to a stevedore are outlined in *Scindia*, *supra*, 541 U.S. at 166-167. The first duty, the turnover duty of safe condition, requires the vessel to have its gear, equipment, tools and work space to be used in the stevedoring operations in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property. *Id.* at 167. The second duty, the turnover duty to warn, requires that the vessel warn the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work. *Id.* at 167. Under the third duty, the active involvement duty, the vessel may be

Kaye, Rose & Partners LLP

liable if it actively involves itself in the cargo operations and negligently injures a longshoreman. *Id.* Under the fourth duty, the active control duty, a vessel may be liable if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation." *Id.* The fifth duty, the duty to intervene, requires the vessel to intervene in the stevedore's operations and correct a dangerous condition when (1) the vessel is aware of the condition, (2) the vessel should realize the condition presents an unreasonable risk of harm to the longshoremen, and (3) the vessel knows that the stevedore, as a result of an 'obviously improvident' judgment, has failed to remedy the situation." *Bjaranson v. Botelho Shipping Corp., Manila*, 873 F.2d 1204, 1207 (9th Cir. 1988).

### C.   ZMA's Evidence in Opposition to Plaintiff's Claim

3.   ZMA will proffer the testimony of plaintiff that he was negligent, failed to exercise reasonable care for his own safety and well being and was inattentive in the following conduct: failing to be attentive and check for potential hazards, including failure to note a condition (improperly stowed turnbuckle) that should have been readily seen and recognized by him and clearly created a potential risk of harm to him in that his choice of a working/standing place was situated immediately below the area where turnbuckles were stowed after having been dropped (delashed) by stevedores of California United Terminals (hereinafter "CUT"); failing to act in accordance with mandatory safety rules set forth in the Pacific Coast Marine Safety Code and failing to adhere to the dictates of his safety training as a longshoreman in working too close to ongoing cargo operations in the Bay adjacent to where he was standing in direct contravention of a Pacific Coast Marine Safety Code Rule 1518 which provides as follows:

Kaye, Rose & Partners LLP

DEFENDANT ZODIAC MARITIME AGENCIES, LTD.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1
2
3
4

> Plaintiff admits that the PCMSC code is applicable to and governs his work as a Foreman and that he is contractually bound to be familiar with and work in compliance with the Safety Rules set forth in the PCMSC including Rule 1518.

5

Had Plaintiff not been working too close to ongoing cargo operations in

6

contravention of Rule 1518, he would not have been in an area where those

7

operations might cause an improperly stowed turnbuckle to suddenly fall and

8

potentially strike him in the head (or elsewhere).

9

     4.     ZMA will proffer the testimony of George Cowan, Captain Milan

10

Vasiljevic, Alexander Vlasov, Naveed Juwale, Eduardo Delos Santos, Brian

11

Kelley, Mike Parks, Ian Pereira, Dave Shoemaker, and its liability expert Robert

12

Taylor to establish that ZMA the Vessel had a custom and practice for

13

conducting regular inspections and safety checks of the Vessel's appurtenances

14

and equipment (including lashing equipment); that the Vessel was turned over to

15

the stevedores in a safe condition; that the crew members were not actively

16

involved in the cargo operations after the Vessel was turned over to the

17

stevedores; that the subject turnbuckle was in use and attached to a container at

18

the time the Vessel arrived in the Port of Los Angeles in October 2011; that it

19

was the stevedores' job to remove the lashings during cargo operations; that it

20

was CUT's and Plaintiff's duty to supervise cargo operations and to monitor for

21

any potential unsafe conditions and to take corrective action if unsafe conditions

22

were found to exist; that the stevedores unlashed the turnbuckles in Bay No. 6

23

(including the subject turnbuckle); that the stevedores were the last ones to lay

24

hands on the subject turnbuckle; that subject incident was likely caused by the

25

stevedores' failure to properly stow the subject turnbuckle back into the storage

26

hook after they had unlashed it from the cargo container; that the "U" type

27

storage hook on which the subject turnbuckle is intended to be stowed when not

28

3

Kaye, Rose & Partners LLP

in use is specifically designed to house the turnbuckle securely and to ensure that the turnbuckle does not slip from its secured position once properly applied to the hook by the stevedores; that had the stevedores properly secured the subject turnbuckle in its assigned hook, quite simply the turnbuckle could not have fallen and struck Plaintiff; that during two separate surveys on October 27, 2011, the subject hook and turnbuckle were tested and worked perfectly as intended without any defects or safety hazards; that CUT performed three pre-shift safety inspections prior to the commencement of cargo operations (on October 26, 2011 at 1715 and 2200, and on October 27, 2011 at 0758) and failed to note any defect, safety hazard or unsafe condition in the Vessel in the areas where the longshoremen would be working, and determined that that the stevedoring gear and the Vessel's cargo gear were in good working order; CUT's stevedores unlashed the subject turnbuckle which was in use securing a container in stow at the time that the Vessel arrived in Port and were obligated to stow it properly on the securing hook used for that purpose, and they apparently failed to do so, leaving the subject turnbuckle in a unsecured condition which ultimately allowed it to fall and strike Plaintiff during the course of ongoing cargo operations; that CUT is not aware of any defect aboard the Vessel that caused or contributed to Plaintiff's incident; that the Vessel's crew were not actively involved in cargo operations at the time of Plaintiff's incident; that the Vessel performed its duty by providing a safe and effective means for securing turnbuckles when not in use or during cargo operations; that there was no change to handrail or lashing securing system since the purchase of the Vessel; that there were no previous similar accidents aboard ZMA's vessels (including the subject Vessel); and ZMA has never received any type of notice of an unsafe condition in the location where Plaintiff's incident occurred.

5.    ZMA will proffer the testimony of its expert witnesses, Charles

DEFENDANT ZODIAC MARITIME AGENCIES, LTD.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Kaye, Rose & Partners LLP

Furst, Ph.D., Michael Lobatz, M.D., as well as Plaintiff's treating physicians, Panos Marmarelis, M.D., James London, M.D., Richard Ness, M.D. and Ronald Farran, M.D., to establish the nature and extent of the injuries about which Plaintiff complains relating to the incident, and to establish that some of the medical conditions (symptoms) about which Plaintiff complains relate to pre-existing conditions, including anxiety and/or Major Depressive Disorder and to prove that Plaintiff has made or more likely than not will be able to make a full recovery from his alleged injuries and return to full duty work as a longshoreman.  These medical experts will also testify that Plaintiff is and has been malingering, and that his alleged conversion disorder (or "foot drop syndrome") is not causally related to the alleged incident.  These medical experts will also testify that Plaintiff's recovery has in part been adversely impacted by his failure to follow the advice and prescribed treatment protocol of his treating doctors and that had Plaintiff followed the advice of his doctors, he more likely than not would have made a quicker and fuller recovery and return to work and/or normal daily activities. To the extent that Plaintiff may not return to work as a longshoreman on account of his alleged injuries, ZMA will proffer the testimony of Howard Stauber to establish the amount of set off wages Plaintiff would more than likely be able to earn with his skill, ability and training.

6.     ZMA will proffer the testimony of its economist, Kim Onisko, CPA, to testify concerning the damages that Plaintiff would be likely to suffer were he not to be able to return to work as a longshoreman and/or should Plaintiff be able to return to work in another suitable vocation (as defined by the vocational rehabilitation expert of Howard Stauber).  Mr. Onisko will also controvert Plaintiff's contentions regarding the alleged economic damages he claims that he has or will sustain.

Kaye, Rose & Partners LLP

5

**D.      Affirmative Defenses That ZMA Has Pleaded And Plans to Pursue**

7.      <u>First Affirmative Defense</u>: As and for a first, separate and affirmative defense to the FAC and each of its purported causes of action, defendant alleges on information and belief that plaintiff did not exercise ordinary care, caution or prudence for his welfare to avoid the happening of the alleged incidents, injuries or damages, if any, and by his own failure to do so, thereby directly and proximately contributed to the happening of said alleged injuries, losses and damages, if any.

8.      <u>Third Affirmative Defense</u>: As and for a third, separate and affirmative defense to the FAC and each of its purported causes of action, defendant alleges that plaintiff failed to reasonably and seasonably exercise care and diligence to avoid loss and to minimize damages and, therefore, plaintiff may not recover for the losses, if any, which could have been prevented.  Therefore, plaintiff's recovery, if any, should be reduced by plaintiff's failure to mitigate damages.

9.      <u>Fifth Affirmative Defense</u>: As and for a fifth, separate and affirmative defense to the FAC and each of its purported causes of action, defendant alleges that the damages allegedly sustained by plaintiff were not caused by any act or omission to act on the part of this answering defendant.

10.      <u>Eighth Affirmative Defense</u>: As and for a eighth, separate and affirmative defense to the FAC and each of its purported causes of action, defendant alleges that if this answering defendant is liable to plaintiff for damages herein, which defendant denies, plaintiff's damages must be reduced by the amount attributable to plaintiff's comparative or relative fault therein.

11.      <u>Ninth Affirmative Defense</u>: As and for a ninth, separate and affirmative defense to the FAC and each of its purported causes of action,

Kaye, Rose & Partners LLP

defendant alleges that it is not legally responsible in any fashion with respect to damages and injuries claimed by plaintiff in his FAC; however, if this answering defendant is subject to any liability to plaintiff, it will be due in whole or in part to the breach of warranty, acts, omissions, activities, carelessness, recklessness and negligence of others; wherefore, any recovery obtained by plaintiff against this answering defendant should be reduced in proportion to the respective negligence and fault and legal responsibility of all other parties, persons and entities, their agents, servants and employees who contributed to and/or caused any such injury and/or damages, in accordance with the law of comparative liability; the liability of this answering defendant, if any, is limited in direct proportion to the percentage of fault actually attributed to this answering defendant.

12. Tenth Affirmative Defense: As and for a tenth, separate and affirmative defense to the FAC and each of its purported causes of action, defendant alleges that the injuries and/or damages, if any, referred to in plaintiff's FAC which are specifically denied, pre-exist the incident alleged in the FAC in whole or in part, and plaintiff cannot recover damages for his pre-existing condition from this answering defendant.

13. Eleventh Affirmative Defense: As and for an eleventh, separate and affirmative defense to the FAC and each of its purported causes of action, defendant alleges that any injury, damage or loss was sustained by and solely caused by and attributable to the unreasonable, unforeseeable and totally inappropriate purpose and improper use made by plaintiff and/or his fellow stevedores, of the equipment alleged in the FAC.

14. Twelfth Affirmative Defense: As and for a twelfth, separate and affirmative defense to the FAC and each of its purported causes of action, defendant alleges on information and belief that any injuries sustained by

Kaye, Rose & Partners LLP

7

plaintiff while aboard the vessel were self-inflicted, or sustained as a result of plaintiff's own voluntary assumption of the risk of such injuries, and that defendant is accordingly not liable for any such injuries.

15.   Thirteenth Affirmative Defense: As and for a thirteenth, separate and affirmative defense to the FAC and each of its purported causes of action, defendant alleges the negligence, if any, and other wrongdoing alleged in plaintiff's FAC was committed by persons who are not employed by defendant, but who are independent contractors or other third parties, for whom liability may not be imputed to defendant.

16.   Fourteenth Affirmative Defense: As and for a fourteenth, separate and affirmative defense to the FAC and each of its purported causes of action, defendant alleges they it is not liable to plaintiff because of the subsequent and intervening acts of third parties which directly caused the happening of the incidents, injuries, losses and damages complained of by plaintiff.

17.   Fifteenth Affirmative Defense: As and for a fifteenth, separate and affirmative defense to the FAC and each of its purported causes of action, defendant alleges that any judgment that may be entered against this answering defendant for non-economic damages is several only and not joint, such that recovery for non-economic damages is limited to an amount proportionate with that degree of fault attributable to this answering defendant, if any, as opposed to fault attributable to plaintiff and other third parties.

18.   Sixteenth Affirmative Defense: As and for a sixteenth, separate and affirmative defense to the FAC and each of its purported causes of action, defendant alleges that plaintiff's recovery, if any, must be reduced by the payments he has received under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 et seq. and/or comparable state workers' compensation statutes.

Kaye, Rose & Partners LLP

Kaye, Rose & Partners LLP

1

### E. Elements Required to Establish ZMA's Affirmative Defenses

2      19.   First Affirmative Defense: [Plaintiff's failure to exercise reasonable

3  care to avoid the incident].  To establish Plaintiff's failure to exercise reasonable

4  care ZMA must show that Plaintiff failed to exercise the care of a reasonably

5  prudent and competent longshoreman during the performance of his work.

6  *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 541 U.S. 156, 166-167

7  (1981); *Bjaranson v. Botelho Shipping Corp., Manila*, 873 F.2d 1204, 1207 (9th

8  Cir. 1988).

9      20.   Third Affirmative Defense: [Plaintiff's failure to mitigate damages].

10  To establish Plaintiff's failure to mitigate damages ZMA must show that Plaintiff

11  failed to take reasonable steps to effect a cure for his injuries or to minimize his

12  losses.  *Young v. American Export Isbrandtsen Lines, Inc.*, 291 F.Supp. 447, 450

13  (S.D.N.Y. 1968); *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1286 (11th

14  Cir. 2000); *Cabezas v. U.S.*, 2007 U.S. Dist. LEXIS 72625, *18 (N.D. Cal.

15  2007).

16      21.   Fifth Affirmative Defense: [ZMA's conduct did not cause Plaintiff's

17  damages].  To establish that ZMA's conduct did not cause Plaintiff's damages

18  ZMA must show that Plaintiff failed to carry his burden of proof to establish that

19  ZMA neglected to exercise reasonable care under the circumstances so as to

20  violate one of the five duties that a vessel owes to a stevedore.  *Scindia Steam*

21  *Navigation Co., Ltd. v. De Los Santos*, 541 U.S. 156, 166-167 (1981).

22      22.   Eighth Affirmative Defense: [Comparative negligence by

23  Plaintiff].  To establish Plaintiff's comparative negligence ZMA must show that

24  (1) Plaintiff failed to exercise the care expected of a reasonably prudent

25  longshoreman in Plaintiff's position; and (2) the aforementioned failure

26  contributed to Plaintiff's injury.  *Almarez v. Universal Marine Corp.*, 472 F.2d

27  123, 124 (9th Cir. 1972); *Shaver Transp. Co. v. Chamberlain*, 399 F.2d 893, 895

28

9

(9th Cir. 1968); *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 408-409 (1953).

23.     Ninth Affirmative Defense: [Third party negligence].  To establish that Plaintiff's damages were caused by the negligence of others ZMA must show that a third party failed to exercise reasonable care under the circumstances so as to injure Plaintiff.  *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 541 U.S. 156, 166-167 (1981).

24.     Tenth Affirmative Defense: [Pre-existing injuries].  To establish that Plaintiff's damages were caused by pre-existing injuries ZMA must show that (1) some or all of Plaintiff's damages claimed from the incident were a result of injuries or conditions that were pre-existing and separate from injuries or conditions sustained as a result of the incident; and (2) Plaintiff's damages claimed from the incident were not the result of an aggravation of pre-existing injuries or conditions.  *Port of Portland v. Director, Office of Workers Comp. Programs*, 932 F.2d 836, 839 (9th Cir. 1991).

25.     Eleventh Affirmative Defense: [Plaintiff's improper use of premises and/or equipment].  To establish Plaintiff's damages were caused by improper use of premises and/or equipment ZMA must show that Plaintiff failed to exercise the care of a reasonably prudent and competent longshoreman in utilizing the Vessel's premises and/or equipment during the performance of his work.  *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 541 U.S. 156, 166-167 (1981); *Bjaranson v. Botelho Shipping Corp., Manila*, 873 F.2d 1204, 1207 (9th Cir. 1988).

26.     Twelfth Affirmative Defense: [Assumption of risk].  To establish that Plaintiff's injuries were caused by risks that he voluntarily assumed ZMA must show that the condition which caused Plaintiff's alleged injuries was an open and obvious one that a reasonably prudent and competent longshoreman should have seen.  *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 541

Kaye, Rose & Partners LLP

10

Kaye, Rose & Partners LLP

U.S. 156, 167 (1981); *Polizzi v. M/V ZEPHYROS II MONROVIA*, 860 F.2d 147, 149 (5th Cir. 1988).

27. Thirteenth Affirmative Defense: [Negligence of independent contractors or third parties]. To establish that Plaintiff's damages were caused by the negligence of an independent contractor or other third party ZMA must show that the independent contractor or third party failed to exercise reasonable care under the circumstances so as to injure Plaintiff. *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 541 U.S. 156, 166-167 (1981). In order to show that another party is an independent contractor ZMA must show that the party is not its agent pursuant to the test set forth in *Restatement (Second) of Agency*, § 220. *Merchants Home Delivery Service, Inc. v. NLRB*, 580 F.2d 966, 973 (9th Cir. 1978).

28. Fourteenth Affirmative Defense: [Intervening and Superseding Acts]. To establish that Plaintiff's damages were caused by an intervening and superseding act ZMA must show that the act of a third person or other force intervened and actively caused Plaintiff harm after he sustained harm as a result of ZMA's negligent conduct, thereby preventing ZMA from being liable for any harm that its antecedent negligence caused to Plaintiff. *Gruver v. Lesman Fisheries, Inc.*, 489 F.3d 978, 985 (9th Cir. 2007); *Farr v. North Carolina Mach. Co.*, 186 F.3d 1165, 1168 (9th Cir. 1999).

29. Fifteenth Affirmative Defense: [Damages limited to proportional fault]. To establish that any judgment against ZMA is several and not joint such that recovery of damages is limited to the amount of ZMA's proportionate fault, ZMA must show that its fault, if any, is only attributable to an apportioned share of Plaintiff's total damages and that some percentage of fault is attributable to Plaintiff and/or other third parties who (a) acted independently and caused a distinct or single harm, (b) for which there is a reasonable basis for division

according to the contribution of each.  *McDermott, Inc. v. AmClyde & Don River Castings, Ltd.*, 511 U.S. 202 (1994); *Becker v. Poling Trans. Corp.*, 356 F.3d 381, 390-391 (2nd Cir. 2004); *Almarez v. Universal Marine Corp.*, 472 F.2d 123, 124 (9th Cir. 1972); *Shaver Transp. Co. v. Chamberlain*, 399 F.2d 893, 895 (9th Cir. 1968); *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 408-409 (1953).

30.    <u>Sixteenth Affirmative Defense</u>: [Plaintiff's recovery reduced by benefits received under LHWCA].  For Plaintiff's recovery to be reduced by the amount of benefits he received under the LHWCA (i.e. the amount of the lien by the stevedore's worker's compensation insurance carrier), the amount of the stevedore's lien must be established.  33 U.S.C. § 933(f); *Peters v. North River Ins. Co.*, 764 F.2d 306, 311 (5th Cir. 1985); *Bloomer v. Liberty Mutual Ins. Co.*, 445 U.S. 74, 75 (1979); *Miller v. Rowan Co., Inc.*, 815 F.2d 1021, 1028 (5th Cir. 1987); *The Etna*, 138 F.2d 37, 41 (3rd Cir. 1943).

### F.    <u>Description of Evidence In Support of Each Affirmative Defense</u>

31.    <u>First Affirmative Defense</u>: [Plaintiff's failure to exercise reasonable care to avoid the incident].  ZMA will proffer the testimony of plaintiff that he was negligent, failed to exercise reasonable care for his own safety and well being and was inattentive in the following conduct: failing to be attentive and check for potential hazards, including failure to note a condition (improperly stowed turnbuckle) that should have been readily seen and recognized by him and clearly created a potential risk of harm to him in that his choice of a working/standing place was situated immediately below the area where turnbuckles were stowed after having been dropped (delashed) by stevedores of California United Terminals (hereinafter "CUT"); failing to act in accordance with mandatory safety rules set forth in the Pacific Coast Marine Safety Code and failing to adhere to the dictates of his safety training as a longshoreman in working too close to ongoing cargo operations in the Bay adjacent to where he

Kaye, Rose & Partners LLP

was standing in direct contravention of a Pacific Coast Marine Safety Code Rule 1518 which provides as follows:

> Plaintiff admits that the PCMSC code is applicable to and governs his work as a Foreman and that he is contractually bound to be familiar with and work in compliance with the Safety Rules set forth in the PCMSC including Rule 1518.

Had Plaintiff not been working too close to ongoing cargo operations in contravention of Rule 1518, he would not have been in an area where those operations might cause an improperly stowed turnbuckle to suddenly fall and potentially strike him in the head (or elsewhere).

32. <u>Third Affirmative Defense</u>: [Plaintiff's failure to mitigate damages]. ZMA will proffer the testimony of its expert witnesses, Charles Furst, Ph.D., Michael Lobatz, M.D., as well as Plaintiff's treating physicians, Panos Marmarelis, M.D., James London, M.D., Richard Ness, M.D. and Ronald Farran, M.D., regarding recommendations for treatment that Plaintiff failed to follow which would have helped resolve or at least minimized Plaintiff's symptoms and/or lead to a quicker and/or fuller recovery of his concussion related symptoms/problems.

33. <u>Fifth Affirmative Defense</u>: [Defendant's conduct did not cause plaintiff's damages]. ZMA will proffer the testimony George Cowan, Captain Milan Vasiljevic, Alexander Vlasov, Naveed Juwale, Eduardo Delos Santos, Brian Kelley, Mike Parks, Ian Pereira, Dave Shoemaker, and its liability expert Robert Taylor to establish that ZMA the Vessel had a custom and practice for conducting regular inspections and safety checks of the Vessel's appurtenances and equipment (including lashing equipment); that the Vessel was turned over to the stevedores in a safe condition; that the crew members were not actively involved in the cargo operations after the Vessel was turned over to the

Kaye, Rose & Partners LLP

13

stevedores; that the subject turnbuckle was in use and attached to a container at the time the Vessel arrived in the Port of Los Angeles in October 2011; that it was the stevedores' job to remove the lashings during cargo operations; that it was CUT's and Plaintiff's duty to supervise cargo operations and to monitor for any potential unsafe conditions and to take corrective action if unsafe conditions were found to exist; that the stevedores unlashed the turnbuckles in Bay No. 6 (including the subject turnbuckle); that the stevedores were the last ones to lay hands on the subject turnbuckle; that subject incident was likely caused by the stevedores' failure to properly stow the subject turnbuckle back into the storage hook after they had unlashed it from the cargo container; that the "U" type storage hook on which the subject turnbuckle is intended to be stowed when not in use is specifically designed to house the turnbuckle securely and to ensure that the turnbuckle does not slip from its secured position once properly applied to the hook by the stevedores; that had the stevedores properly secured the subject turnbuckle in its assigned hook, quite simply the turnbuckle could not have fallen and struck Plaintiff; that during two separate surveys on October 27, 2011, the subject hook and turnbuckle were tested and worked perfectly as intended without any defects or safety hazards; that CUT performed three pre-shift safety inspections prior to the commencement of cargo operations (on October 26, 2011 at 1715 and 2200, and on October 27, 2011 at 0758) and failed to note any defect, safety hazard or unsafe condition in the Vessel in the areas where the longshoremen would be working, and determined that that the stevedoring gear and the Vessel's cargo gear were in good working order; CUT's stevedores unlashed the subject turnbuckle which was in use securing a container in stow at the time that the Vessel arrived in Port and were obligated to stow it properly on the securing hook used for that purpose, and they apparently failed to do so, leaving the subject turnbuckle in a unsecured condition which ultimately allowed

DEFENDANT ZODIAC MARITIME AGENCIES, LTD.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Kaye, Rose & Partners LLP

1   it to fall and strike Plaintiff during the course of ongoing cargo operations; that

2   CUT is not aware of any defect aboard the Vessel that caused or contributed to

3   Plaintiff's incident; that the Vessel's crew were not actively involved in cargo

4   operations at the time of Plaintiff's incident; that the Vessel performed its duty

5   by providing a safe and effective means for securing turnbuckles when not in use

6   or during cargo operations; that there was no change to handrail or lashing

7   securing system since the purchase of the Vessel; that there were no previous

8   similar accidents aboard ZMA's vessels (including the subject Vessel); and ZMA

9   has never received any type of notice of an unsafe condition in the location

10  where Plaintiff's incident occurred.

11          34.     Eighth Affirmative Defense: [Comparative negligence by plaintiff].

12  ZMA will proffer the testimony of Plaintiff that he was negligent, failed to

13  exercise reasonable care for his own safety and well being and was inattentive in

14  the following conduct: failing to be attentive and check for potential hazards,

15  including failure to note a condition (improperly stowed turnbuckle) that should

16  have been readily seen and recognized by him and clearly created a potential risk

17  of harm to him in that his choice of a working/standing place was situated

18  immediately below the area where turnbuckles were stowed after having been

19  dropped (delashed) by stevedores of California United Terminals (hereinafter

20  "CUT"); failing to act in accordance with mandatory safety rules set forth in the

21  Pacific Coast Marine Safety Code and failing to adhere to the dictates of his

22  safety training as a longshoreman in working too close to ongoing cargo

23  operations in the Bay adjacent to where he was standing in direct contravention

24  of a Pacific Coast Marine Safety Code Rule 1518 which provides as follows:

25          Plaintiff admits that the PCMSC code is applicable to and governs

26          his work as a Foreman and that he is contractually bound to be

27          familiar with and work in compliance with the Safety Rules set forth

28

15

in the PCMSC including Rule 1518.

Had Plaintiff not been working too close to ongoing cargo operations in contravention of Rule 1518, he would not have been in an area where those operations might cause an improperly stowed turnbuckle to suddenly fall and potentially strike him in the head (or elsewhere).

35.   Ninth Affirmative Defense: [Third party negligence].  ZMA will proffer the testimony of Brian Kelley and Mike Parks that CUT performed three pre-shift safety inspections prior to the commencement of cargo operations (on October 26, 2011 at 1715 and 2200, and on October 27, 2011 at 0758) and failed to note any defect, safety hazard or unsafe condition in the Vessel in the areas where the longshoremen would be working, and determined that that the stevedoring gear and the Vessel's cargo gear were in good working order.  Had a defect existed, as in an improperly secured turnbuckle at the time of those inspections, CUT was in the best place to note that defect/hazard and should have done so.  Second, CUT's stevedores unlashed the subject turnbuckle which was in use securing a container in stow at the time that the Vessel arrived in Port and were obligated to stow it properly on the securing hook used for that purpose. They apparently failed to do so, leaving the subject turnbuckle in an unsecured condition which ultimately allowed it to fall and strike Plaintiff during the course of ongoing cargo operations.

36.   Tenth Affirmative Defense: [Pre-existing injuries].  ZMA will proffer the testimony of its expert witnesses, Charles Furst, Ph.D., Michael Lobatz, M.D., as well as Plaintiff's treating physicians, Panos Marmarelis, M.D., James London, M.D., Richard Ness, M.D. and Ronald Farran, M.D. that plaintiff had a history of pre-existing anxiety and Major Depressive Disorder.  They will testify that Plaintiff's post-incident symptoms were caused and/or exacerbated by this pre-existing medical history.  ZMA will also proffer the testimony of Charles

DEFENDANT ZODIAC MARITIME AGENCIES, LTD.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Kaye, Rose & Partners LLP

Furst, Ph.D. that plaintiff had a pre-existing Major Depressive Disorder and that his inability to achieve a full recovery relates to these pre-existing conditions and not to any condition causally connected to the alleged incident.

37.   <u>Eleventh Affirmative Defense</u>: [Plaintiff's improper use of premises and/or equipment].  ZMA will proffer the testimony of Plaintiff that he was negligent, failed to exercise reasonable care for his own safety and well being and was inattentive in the following conduct: failing to be attentive and check for potential hazards, including failure to note a condition (improperly stowed turnbuckle) that should have been readily seen and recognized by him and clearly created a potential risk of harm to him in that his choice of a working/standing place was situated immediately below the area where turnbuckles were stowed after having been dropped (delashed) by stevedores of California United Terminals (hereinafter "CUT"); failing to act in accordance with mandatory safety rules set forth in the Pacific Coast Marine Safety Code and failing to adhere to the dictates of his safety training as a longshoreman in working too close to ongoing cargo operations in the Bay adjacent to where he was standing in direct contravention of a Pacific Coast Marine Safety Code Rule 1518 which provides as follows:

> Plaintiff admits that the PCMSC code is applicable to and governs his work as a Foreman and that he is contractually bound to be familiar with and work in compliance with the Safety Rules set forth in the PCMSC including Rule 1518.

Had Plaintiff not been working too close to ongoing cargo operations in contravention of Rule 1518, he would not have been in an area where those operations might cause an improperly stowed turnbuckle to suddenly fall and potentially strike him in the head (or elsewhere).

38.   <u>Twelfth Affirmative Defense</u>: [Assumption of risk]. ZMA will

17

Kaye, Rose & Partners LLP

proffer he testimony of George Cowan, Captain Milan Vasiljevic, Alexander Vlasov, Naveed Juwale, Eduardo Delos Santos, Brian Kelley, Mike Parks, Ian Pereira, Dave Shoemaker, and its liability expert Robert Taylor to establish that the condition of the subject turnbuckle was open and obvious and one that a reasonably prudent and competent longshoreman should have seen, avoided and/or mitigated against.  Thus, Plaintiff's injuries were caused by risks that he voluntarily assumed.

39.    Thirteenth Affirmative Defense: [Negligence of independent contractors or third parties].  ZMA will proffer the testimony of Brian Kelley and Mike Parks that CUT performed three pre-shift safety inspections prior to the commencement of cargo operations (on October 26, 2011 at 1715 and 2200, and on October 27, 2011 at 0758) and failed to note any defect, safety hazard or unsafe condition in the Vessel in the areas where the longshoremen would be working, and determined that that the stevedoring gear and the Vessel's cargo gear were in good working order.  Had a defect existed, as in an improperly secured turnbuckle at the time of those inspections, CUT was in the best place to note that defect/hazard and should have done so.  Second, CUT's stevedores unlashed the subject turnbuckle which was in use securing a container in stow at the time that the Vessel arrived in Port and were obligated to stow it properly on the securing hook used for that purpose.  They apparently failed to do so, leaving the subject turnbuckle in an unsecured condition which ultimately allowed it to fall and strike Plaintiff during the course of ongoing cargo operations.

40.    Fourteenth Affirmative Defense: [Intervening and Superseding Acts].  ZMA will proffer the testimony of Brian Kelley and Mike Parks that CUT performed three pre-shift safety inspections prior to the commencement of cargo operations (on October 26, 2011 at 1715 and 2200, and on October 27, 2011 at 0758) and failed to note any defect, safety hazard or unsafe condition in the

18

Kaye, Rose & Partners LLP

Vessel in the areas where the longshoremen would be working, and determined that that the stevedoring gear and the Vessel's cargo gear were in good working order.  Had a defect existed, as in an improperly secured turnbuckle at the time of those inspections, CUT was in the best place to note that defect/hazard and should have done so.  Second, CUT's stevedores unlashed the subject turnbuckle which was in use securing a container in stow at the time that the Vessel arrived in Port and were obligated to stow it properly on the securing hook used for that purpose.  They apparently failed to do so, leaving the subject turnbuckle in an unsecured condition which ultimately allowed it to fall and strike Plaintiff during the course of ongoing cargo operations.

41:   <u>Fifteenth Affirmative Defense</u>: [Damages limited to proportional fault].  ZMA will proffer the testimony of Plaintiff that he was negligent, failed to exercise reasonable care for his own safety and well being and was inattentive in the following conduct: failing to be attentive and check for potential hazards, including failure to note a condition (improperly stowed turnbuckle) that should have been readily seen and recognized by him and clearly created a potential risk of harm to him in that his choice of a working/standing place was situated immediately below the area where turnbuckles were stowed after having been dropped (delashed) by stevedores of California United Terminals (hereinafter "CUT"); failing to act in accordance with mandatory safety rules set forth in the Pacific Coast Marine Safety Code and failing to adhere to the dictates of his safety training as a longshoreman in working too close to ongoing cargo operations in the Bay adjacent to where he was standing in direct contravention of a Pacific Coast Marine Safety Code Rule 1518 which provides as follows:

> Plaintiff admits that the PCMSC code is applicable to and governs his work as a Foreman and that he is contractually bound to be familiar with and work in compliance with the Safety Rules set forth

Kaye, Rose & Partners LLP

in the PCMSC including Rule 1518.

Had Plaintiff not been working too close to ongoing cargo operations in contravention of Rule 1518, he would not have been in an area where those operations might cause an improperly stowed turnbuckle to suddenly fall and potentially strike him in the head (or elsewhere).  ZMA will also proffer the testimony of Brian Kelley and Mike Parks that CUT performed three pre-shift safety inspections prior to the commencement of cargo operations (on October 26, 2011 at 1715 and 2200, and on October 27, 2011 at 0758) and failed to note any defect, safety hazard or unsafe condition in the Vessel in the areas where the longshoremen would be working, and determined that that the stevedoring gear and the Vessel's cargo gear were in good working order.  Had a defect existed, as in an improperly secured turnbuckle at the time of those inspections, CUT was in the best place to note that defect/hazard and should have done so.  Second, CUT's stevedores unlashed the subject turnbuckle which was in use securing a container in stow at the time that the Vessel arrived in Port and were obligated to stow it properly on the securing hook used for that purpose.  They apparently failed to do so, leaving the subject turnbuckle in an unsecured condition which ultimately allowed it to fall and strike Plaintiff during the course of ongoing cargo operations.

42.    <u>Sixteenth Affirmative Defense</u>: [Plaintiff's recovery reduced by benefits received under LHWCA].  ZMA will proffer the documentation and testimony from Plaintiff and/or an authorized representative of the worker's compensation carrier for CUT, establishing the amount of benefits Plaintiff received under the LHWCA (i.e. the amount of the lien by the worker's compensation carrier).

## G.    **Identification of Evidentiary Issues**

Kaye, Rose & Partners LLP

43.     The evidentiary issues anticipated by ZMA are set forth in its motions *in limine* No. 1 through 5 (Dkt. #31, 32, 33, 34 and 35) filed on December 18, 2015.

**H.     Identification of Issues of Law**

44.     While ZMA enumerates the issues of law germane to the case below, a more detailed discussion of those issues is set forth in ZMA's motion for summary judgment or alternatively partial summary judgment (Dkt. #21) filed on November 10, 2015.

(a)     Whether ZMA breached any of the three *Scindia* duties (i.e. turnover duty, active control duty, and duty to intervene).

(b)     Whether the alleged defect (improperly stowed turnbuckle) existed at the time the Vessel was turned over to the stevedores.

(c)     Whether the alleged defect (improperly stowed turnbuckle) was caused by the CUT stevedores.

(d)     Whether the Vessel's crew members were involved in cargo operations after the Vessel was turned over to the stevedores.

(e)     Whether Plaintiff was negligent in any of the following conduct: failing to be attentive and check for potential hazards, including failure to note a condition (improperly stowed turnbuckle); working too close to ongoing cargo operations in contravention of Pacific Coast Marine Safety Code Rule 1518.

(f)     Whether the alleged defect (improperly stowed turnbuckle) was open and obvious and should have been anticipated by a competent longshoreman.

**II.     BIFURCATION OF ISSUES**

45.     ZMA requests that the issues of liability and damages be bifurcated. See *Federal Rules of Civil Procedure* ("FRCP") 42(b) (the court may order

DEFENDANT ZODIAC MARITIME AGENCIES, LTD.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Kaye, Rose & Partners LLP

separate trials of one or more separate issues, claims, counterclaims, crossclaims or third party claims "for convenience, to avoid prejudice, or to expedite and economize."). Courts have broad discretion to bifurcate a trial. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004). Bifurcation is commonly used to separate liability and damages issues in order to accomplish "expedition and economy" by rendering unnecessary any trial of damages issues where liability issues are resolved in defendant's favor. *See Arthur Young & Co. v. U.S. Dist. Court*, 549 F.2d 686, 697 (9th Cir. 1977); *In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 452, fn.5 (3rd Cir. 1997); *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553 (6th Cir. 1996). Bifurcation in the instant case serves the purpose of expediting and economizing the case by eliminating an unnecessary trial of damages should liability be resolved in favor of ZMA. Furthermore, it would avoid prejudice that would result on the liability issue from the jury hearing evidence on the extent and nature of Plaintiff's injuries. *See Moss v. Assoc. Trans., Inc.*, 344 F.2d 23, 25-26 (6th Cir. 1965); *Beeck v. Acquaslide N. Dive Corp.*, 562 F.2d 537, 542 (8th Cir. 1977). Moreover, the interests of convenience would be served in that the parties' efforts in coordinating the presentation of evidence and witnesses on damages would be wholly facilitated. Accordingly, the overall interests of the parties and the court are aided through bifurcation of the issues of liability and damages.

## III.  JURY TRIAL

46.   Any issues of fact in this matter are triable to a jury. Plaintiff made a timely jury demand in this case.

## IV.  ATTORNEYS' FEES

47.   At this time ZMA does not assert a claim for attorneys' fees.

## V.  ABANDONMENT OF ISSUES

ZMA has abandoned the following affirmative defenses pleaded in its

22

Kaye, Rose & Partners LLP

Kaye, Rose & Partners LLP

Answer:

48.   <u>Second Affirmative Defense</u>:  As and for a second, separate and affirmative defense to the FAC and each of its purported causes of action, defendant alleges that plaintiff's FAC and each purported cause of action therein fails to state facts sufficient to constitute a cause of action against this answering defendant.

49.   <u>Fourth Affirmative Defense</u>:  As and for a fourth, separate and affirmative defense to the FAC and each of its purported causes of action, defendant alleges that plaintiff's FAC is barred by the applicable statute of limitations and/or the doctrine of laches.

50.   <u>Sixth Affirmative Defense</u>:  As and for a sixth, separate and affirmative defense to the FAC and each of its purported causes of action, defendant alleges that because of the conduct, acts and omissions of plaintiff, plaintiff has waived any claim to damages alleged in his FAC.

51.   <u>Seventh Affirmative Defense</u>:  As and for a seventh, separate and affirmative defense to the FAC and each of its purported causes of action, defendant alleges that because of the conduct, acts and omissions of plaintiff, plaintiff is estopped from claiming the damages alleged in his FAC.

52.   <u>Seventeenth Affirmative Defense</u>: As and for a seventeenth, separate and affirmative defense to the FAC and each of its purported causes of action, defendant alleges that plaintiff has waived his right to trial by jury inasmuch as plaintiff has selected to proceed under this Court's admiralty jurisdiction.

53.   <u>Eighteenth Affirmative Defense</u>: As and for an eighteenth, separate and affirmative defense to the FAC and each of its purported causes of action, defendant alleges that plaintiff failed to properly serve the Summons and FAC.

///

23

1

Dated: December 23, 2015          **KAYE, ROSE & PARTNERS, LLP**

2

3

By: _/s/ Frank C. Brucculeri_

4

Bradley M. Rose
Frank C. Brucculeri
Daniel F. Berberich

5

Attorneys for Defendants
ZODIAC MARITIME AGENCIES,

6

LTD.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

DEFENDANT ZODIAC MARITIME AGENCIES, LTD.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Kaye, Rose & Partners LLP